IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; NATIONAL PARK SERVICE,<br><br>Defendants. | Case No. 1:07-cv-02112 (EGS) |

### JOINT CASE MANAGEMENT STATEMENT

Pursuant to this Court's January 24, 2008 Order (Dkt. #12) and Local Rule 16.3, Plaintiff National Parks Conservation Association ("NPCA") and Federal Defendants the United States Department of the Interior and the National Park Service (Collectively "the Parties"), submit the following Joint Case Management Statement addressing each of the relevant topics listed in LCvR 16.3(c).

### PRELIMINARY STATEMENT

The Parties call the Court's attention to the fact that the case captioned *Greater Yellowstone Coalition et al. v. Kempthorne*, 07-cv-2111, is also pending before the Court. The instant case and the *Greater Yellowstone Coalition* case, filed November 20 and November 21, 2007, both challenge a Final Environmental Impact Statement, Record of Decision, and an amended regulation implementing that decision promulgated by the National Park Service ("NPS") permitting recreational use of snowmobiles and snowcoaches, subject to certain conditions, in Yellowstone National Park, Grand Teton

National Park, and the John D. Rockefeller, Jr. Memorial Parkway (the "Winter Use Plan"). The Court issued an Order for Meet and Confer Report in *Greater Yellowstone Coalition* on February 8, 2008, similar to that in this case. In order to co-ordinate these two similar cases, the meet and confer conferences in the two cases were held jointly and the separate Joint Case Management Statements in these two cases have been coordinated. *See* Section 3, below, relating to possible consolidation.

The Record of Decision containing the Winter Use Plan became effective on December 19, 2007 when the final rule was issued. The rule was drafted in such a way that changes to the management of the Parks during the winter season relative to the temporary plan that has been in place since 2004 (such as daily entry limits, designated routes, etc.) will not become effective until the 2008-2009 winter season. The Parties agree that it would be desirable to resolve these claims as much in advance of the commencement of that season as possible.

In addition to these two cases pending before this Court, the Parties call the Court's attention to the fact that two other cases challenging the Winter Use Plan were filed in the United States District Court for the District of Wyoming on December 13, 2007 (State of Wyoming, Plaintiff) and January 2, 2008 (Board of County Commissioners, County of Park, Wyoming, Plaintiffs), respectively. Those cases have been consolidated into one case: *Wyoming v. U.S. Department of the Interior*, Case No. 07-CV-319B (D. Wyoming). On February 22, 2008, the International Snowmobile Manufacturer's Association ("ISMA"), The American Council of Snowmobile Associations, The Blue Ribbon Coalition, and Terri Manning moved to intervene in the State of Wyoming case, which was granted on February 26, 2008. By Order of

January 30, 2008, the presiding judge in those cases, the Honorable Clarence A. Brimmer, has set a hearing date of September 15, 2008 to hear dispositive motions in those cases. Those cases differ from those before this Court in that plaintiffs and intervenors there challenge the limitations and restrictions on snowmobile use imposed by the Winter Use Plan, while the cases before this Court challenge the Winter Use Plan's authorization of continued recreational snowmobile use in the Parks at levels Plaintiff alleges are impermissible.

\* \* \*

As a preliminary matter, the Parties agree that each of the claims in the Plaintiffs' First Amended Petition for Review of Agency Action is brought pursuant to the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*. Accordingly, this case is exempted from Local Rule 16.3 as well as F.R.Civ.P. 26. *See* LCvR 16.3(b) (exempting actions "for review on an administrative record"); F.R.Civ.P. 26(a)(1)(E)(i), (f) (same). Nevertheless, the parties set forth below a discussion of the relevant topics listed in Local Rule 16.3(c) to facilitate case planning and resolution and to ensure strict compliance with this Court's Order.

1. **Statement of the Case and Statutory Basis for All Causes of Action and Defenses**

    A.   **Plaintiff's Statement:**

In 2003, this Court invalidated a Supplemental Environmental Impact Statement, Record of Decision and December 11, 2003 final rule issued by NPS that permitted recreational snowmobiles in Yellowstone National Park, Grand Teton National Park and the John D. Rockefeller, Jr. Memorial Parkway that connects them (the "Parks"). In the intervening years, the NPS and others have performed a number of studies of the effects

3

of recreational snowmobiles on the parks (the "Studies"). In December 2007, the NPS adopted the Winter Use Plan through its Record of Decision dated November 20, 2007 and implemented the Winter Use Plan by amending 36 C.F.R. §§ 7.13, 7.21 and 7.22. The NPCA brings this action under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, to challenge the Winter Use Plan and the environmental impact statement (the "FEIS") and resulting decision (the "Record of Decision," or "ROD") on which those amended regulations are based.

First, the NPCA claims that the Winter Use Plan is not in accordance with the law (*see* 5 U.S.C. 706(2)) because the Studies have now demonstrated that the Winter Use Plan would cause serious harm to the Parks' natural soundscape, wildlife and air quality. The Winter Use Plan therefore is not in accordance with (1) 16 U.S.C. 22, in which Congress mandated that the NPS make regulations to preserve the natural wonders of Yellowstone National Park against spoliation and to preserve them in their natural condition and prohibited regulations inconsistent with those goals; (2) 16 U.S.C. 1 and 1a-1, in which Congress prohibited the NPS from permitting impairment of the scenery, natural and historic objects and wild life in the National Park System and prohibited the NPS from administering the parks "in derogation of the values and purposes" for which they were established; (3) Executive Order 11644, as amended, which prohibits the NPS from permitting snowmobiles in the National Park System unless the Secretary of the Interior determines that such use "will not adversely affect their natural, aesthetic or scenic values," a determination not made here; and (4) the NPS's own regulation, 36 C.F.R. § 2.18(c), implementing that Executive Order, which prohibits snowmobiles in the

National Parks except when their use is "consistent with the park's natural, cultural, scenic and aesthetic values" and when their use "will not disturb wildlife or damage park resources."

Second, the NPCA asserts that the ROD and the FEIS are arbitrary, capricious and an abuse of discretion (*see* 5 U.S.C. 706(2)), because, among other things, there is no rational connection between the facts as found in the Studies and the NPS's conclusions. For example, in order to permit a conclusion in the FEIS and the ROD that the Winter Use Plan would not cause impermissible adverse impacts, Federal Defendants controlled the analytical process; disregarded their own scientists' conclusions about the adverse impacts the proposed snowmobile use would cause; ignored those scientists' recommendation against adopting the proposed Winter Use Plan; and changed important NPS policies and interpretations concerning the protection of wildlife without explanation.

Third, the NPCA asserts that the NPS, in its FEIS and ROD, violated the National Environmental Policy Act, 42 U.S.C. 4321 *et seq.*, which required the NPS to define its objectives so as to carry out the purposes and requirements of the underlying legislation, to use reasonable tests and methods for evaluating the degree to which the considered alternatives meet those objectives and requirements and not to define the objective so as to permit a favored result.

**B.     Federal Defendants' Statement:**

As this Court is aware, winter recreational use of the Parks has been the subject of substantial controversy and prior litigation before this Court and the District of Wyoming. Interested stakeholders on both sides of the winter recreational use issue have participated in litigation regarding the National Park Services' ("NPS") 2001 rule, 2003

rule, and 2004 rule relating to winter recreational use of the Parks. In those prior cases, a number of issues have been raised, including snowcoach use, guiding requirements, and snowmobile limits by snowmobile use advocates, and the effects of snowmobile use and road grooming on bison and other wildlife, air quality, and noise by conservation groups.

During a lengthy NEPA and rulemaking process, NPS has carefully considered the respective courts' past directives and voluminous comments from many of the same stakeholders involved in the prior litigation. All of the issues raised and comments have been carefully considered by NPS, and many have been the subject of extensive scientific study, both by the government and independent researchers. In promulgating the current rule, NPS has carefully considered all of the issues that have been raised and crafted a rule that will ensure that visitors have an appropriate range of winter recreation opportunities that are appropriate in the national park setting. As such, the Winter Use Plan and implementing rule are in compliance with the Park Service Organic Act, 16 U.S.C. §§ 1 *et seq.*, the Yellowstone Act, 16 U.S.C. § 22 *et seq.*, applicable NPS regulations, and Executive Order 11644 as amended. Accordingly, the Winter Use Plan is not arbitrary, capricious, or in violation of the law pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2). Through the completion of an extremely thorough EIS process, NPS also has fully complied with all of the requirements of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*

### 2.   Whether the Case Is Likely to be Disposed of by Dispositive Motion

The Parties agree that this case should be resolved by dispositive motions, because Plaintiffs' claims arise under the APA.

### 3. The Date by Which Other Parties Shall be Joined or the Pleadings Amended

(a) The Parties agree that all proper parties are before the Court. The Parties do not anticipate filing any amendments to their pleadings at this time relating to the claims now asserted, but the Parties reserve the right to seek leave of the Court to amend as the Court may find appropriate.

(b) The parties also discussed, but could not agree on, the impact on this litigation of another issue that might arise during the summer of 2008. The FEIS considered and supported the winter closing of a mountain pass, Sylvan Pass, through which snowmobile traffic has been entering Yellowstone National Park from the Cody, Wyoming area. However, when the Winter Use Plan ROD was adopted and the new regulation promulgated, the NPS announced that Sylvan Pass would instead be opened as long as "full forecasting indicates the pass is safe." In addition, the NPS announced that it would participate in negotiations with representatives of the State of Wyoming; Park County, Wyoming; and the town of Cody, Wyoming to explore further the issue of keeping Sylvan Pass open to oversnow travel during the winter. The NPCA believes that the FEIS was correct in supporting the closing of Sylvan Pass to oversnow travel during the winter. This portion of the Winter Use Plan, however, is not final in light of those negotiations. The NPCA advised the Government, and hereby advises the Court, that the NPCA might seek leave to amend its complaint when the NPS finalizes that portion of its Winter Use Plan relating to Sylvan Pass. If the NPCA seeks leave to amend its complaint in this regard, however, the NPCA will seek a separate schedule for the briefing and resolution of those Sylvan Pass claims, so that that issue would not delay the resolution of the claims currently asserted in the NPCA's petition prior to the winter season of 2008-

2009. Federal Defendants reserve their right to oppose NPCA's proposed amendment to its pleadings and to assert all applicable defenses to such new claims.

(c) The Parties agree that this case should be consolidated with *Greater Yellowstone Coalition et al. v. Kempthorne*, 07-cv-2111, provided that (i) any order of consolidation should state that, in the event there is a motion to transfer this case to the United States District Court for the District of Wyoming, such motion should be addressed and resolved separately for each of the instant case and the Greater Yellowstone Coalition case without regard to their having been consolidated and (ii) the NPCA reserves the right to file separate briefs. The Parties will file a motion to this effect within one week of the filing of this Statement.

(d) With respect to the Wyoming litigation, *Wyoming v. U.S. Department of the Interior*, Case No. 07-CV-319B (D. Wyoming), Federal Defendants state as follows: The existence of parallel petitions for judicial review of the same agency action in different district courts presents the very real possibility that conflicting judgments ultimately may be entered by the respective courts. In addition, the Parties have been informed that ISMA, who has intervened in the Wyoming litigation, will seek to intervene in the litigation before this Court as well. Thus, at least one of the same parties before the Wyoming court intends to participate in the proceedings before this Court regarding the same Winter Use Plan. Accordingly, the Federal Defendants intend to file conditional motions for transfer of venue in both district courts, so that all issues relating to the Winter Use Plan may be heard at one time, and so that conflicting judgments may be avoided. Federal Defendants intend to file their concurrent

conditional motions in both district courts within two weeks of the filing of this Statement.

### 4. Whether Factual and Legal Issues Can Be Agreed Upon or Narrowed

The Parties agree that this case will be resolved by dispositive motions, which will resolve all legal issues. In addition, the Parties agree that the Plaintiffs' claims arise under the APA, and that this litigation constitutes an action "for review on an administrative record" within the meaning of LCvR 16.3(b) and Federal Rules of Civil Procedure 26(a)(1)(E)(i), (f). Accordingly, this Court is not being called upon to make findings of fact.

### 5. Whether the Case Should Be Assigned to a Magistrate Judge for All Purposes, Including Trial

The Parties agree that this case should not be assigned to a magistrate judge.

### 6. Whether There Is a Realistic Possibility of Settlement

The Parties have reviewed LCvR 16.3(c)(5), have discussed the available dispute resolution options provided by the Court and other entities, and have considered whether this case might benefit from any of the available dispute resolution options. The Parties agree there is no realistic possibility of settling this case, and further agree that ADR would not be helpful. The Parties note, however, that this case will be resolved by dispositive motions and, therefore, judicial economy will be served because there will be no need for trial or evidentiary proceedings.

7.  **Dates for Filing of Motions for Summary Judgment and/or Cross Motions, Oppositions, and Replies; and Proposed Date for a Decision on the Motions**

The Parties anticipate that the claims in this action will be resolved on cross-motions for summary judgment, following Defendant's preparation and service of the administrative record. The Parties propose the following briefing schedule:

<u>**Proposed Schedule**</u>

- <u>March 21, 2008</u>: Federal Defendants to (i) file and serve a Certification of the Record and comprehensive index to the record documents (based on Bates numbering) and (ii) make hard copies of the Administrative Record available at a convenient location in the District of Columbia for inspection and copying by Plaintiff at its expense, provided the Parties will work together in good faith to minimize the expense and burden.

- <u>April 23, 2008</u>: Plaintiff files its motion for summary judgment.

- <u>May 1, 2008</u>: Defendants will file and serve a Notice of Lodging and a CD-ROM containing an electronic version of the complete Administrative Record.

- <u>June 4, 2008</u>: Defendants file their combined opposition and cross-motion for summary judgment.

- <u>July 2, 2008</u>: Plaintiff files its combined opposition to Defendants' cross-motion and reply as to Plaintiff's motion.

- <u>July 30, 2008</u>: Defendants file their reply brief as to their cross-motion.

- <u>As soon thereafter as the Court directs</u>: hearing on motion.

Counsel for the Federal Defendants have reviewed this Joint Case Management Statement and have authorized the undersigned to sign on their behalf.

Respectfully submitted this 7th day of March 2008

_____
Robert D. Rosenbaum (D.C. Bar No. 090498)
Donna E. Patterson (D.C. Bar No. 358701)
Ingo W. Sprie
Meetu Kaul (D.C. Bar No. 468146)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Phone:   (202) 942-5862
Fax:     (202) 942-5999

Attorneys for Plaintiff


Ronald J. Tenpas
Assistant Attorney General

Guillermo A. Montero, MA Bar No. 660903
Barry A. Weiner, NY Bar No. 2739894
Luther L. Hajek, DC Bar No. 467742
Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Phone:   202-305-0469
Fax:     202-305-0274

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:07-cv-02112 (EGS) |
| UNITED STATES DEPARTMENT OF THE INTERIOR; NATIONAL PARK SERVICE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

# [PROPOSED] SCHEDULING ORDER

Having considered the Parties' Joint Case Management Statement, it is hereby

ORDERED that Defendants file and serve a Certification of the Record and comprehensive index to the record documents (based on Bates numbering) by March 21, 2008; and it is

FURTHER ORDERED that Defendants by March 21, 2008 make hard copies of the Administrative Record available at a convenient location in the District of Columbia for inspection and copying by Plaintiff at its expense, provided the Parties will work together in good faith to minimize the expense and burden; and it is

FURTHER ORDERED that Defendants will file and serve a Notice of Lodging and a CD-ROM containing an electronic version of the complete Administrative Record by May 1, 2008; and it is

FURTHER ORDERED that:

1) Plaintiff files its motion for summary judgment by April 23, 2008;

2) Defendants file their combined opposition and cross-motion for summary judgment by June 4, 2008;

3) Plaintiff files its combined opposition to Defendants' cross-motion and reply as to Plaintiff's motion by July 2, 2008;

4) Defendants file their reply brief by July 30, 2008.


SO ORDERED this \_\_\_\_ day of _____, 2008.


_____
EMMET G. SULLIVAN
United States District Judge